RECORD NO. 15-1541

In The

# United States Court of Appeals

### For The Fourth Circuit

## JONATHAN RUSSEL FOLMAR;
## MARGARET FOLMAR,

*Plaintiffs – Appellants*,

**v.**

## SARAH HARRIS, individually and as an agent for Cooke Realty, Inc.; COOKE REALTY, INC.,

*Defendants – Appellees*.

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### AT WILMINGTON

———————

### BRIEF OF APPELLANTS

———————

**F. William DeVore, IV**
**DEVORE, ACTON & STAFFORD, P.A.**
**438 Queens Road**
**Charlotte, North Carolina  28207**
**(704) 377-5242**

*Counsel for Appellants*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-1541__      Caption: __Jonathan Russel Folmar and Margaret Folmar v. Sarah Harris, et. al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Jonathan Russel Folmar and Margaret Folmar__
(name of party/amicus)

who is _____Appellants_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2.   Does party/amicus have any parent corporations? ☐YES ☑NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☑NO
     If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Fred William DeVore, IV                Date:      05/19/2015

Counsel for: Appellants

## CERTIFICATE OF SERVICE
*************************

I certify that on      May 19, 2015      the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:
clayc@cmclawfirm.com
karynw@cmclawfirm.com

Clay Collier - Attorney for Appellees

/s/ Fred William DeVore, IV                          05/19/2015
      (signature)                                        (date)

- 2 -

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..........................................ii

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION.........1

STATEMENT OF THE ISSUES.......................................1

STATEMENT OF THE CASE.........................................1

    Statement of the Facts...................................3

SUMMARY OF ARGUMENTS..........................................5

ARGUMENT WITH STANDARD OF REVIEW..............................6

    Discussion of the Issues.................................6

    I.    Whether collateral estoppel bars Plaintiffs/Appellants' claims against the Defendants/Appellees................................6

        A.    MOTION TO DISMISS STANDARD......................6

        B.    COLLATERAL ESTOPPEL.............................7

        C.    DUTIES OF REAL ESTATE AGENTS....................9

        D.    *JOHN V. ROBBINS* ANALYSIS......................10

            *John v. Robbins* Facts.........................11

            *John v. Robbins* Holding.......................13

        E.    DIFFERENCES BETWEEN KESIAH CASE AND PRESENT LAWSUIT.......................................15

        F.    FRAUD AND MISREPRESENTATION CLAIM..............16

CONCLUSION...................................................18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)....7

*Erickson v. Pardus*,
    551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)....7

*John v. Robbins*,
    764 F. Supp. 379 (M.D.N.C. 1991)......................*passim*

*Marshall v. Keaveny*,
    38 N.C. App. 644, 248 S.E.2d 750 (1978)..............13, 14

*Republican Party of N.C. v. Martin*,
    980 F.2d 943 (4th Cir. 1992)..............................7

*Spence v. Spaulding & Perkins*, *Ltd.*,
    82 N.C. App. 665, 347 S.E.2d 864 (1986)...................9

*Williams v. Peabody*,
    217 N.C. App. 1, 719 S.E.2d 88 (2011)..........5-6, 7, 8, 18

**STATUTES**

28 U.S.C. § 1332..............................................1

**RULES**

Fed. R. Civ. P. 8(a)(2).......................................7

Fed. R. Civ. P. 12(b)(6)....................................6, 7

**STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION**

This appeal is taken from an appealable final order of the United States District Court for the Eastern District of North Carolina (hereinafter referred to as "the District Court") granting Defendants-Appellees' (hereinafter "Defendants") Motion to Dismiss on the basis of collateral estoppel.  J.A., 44.

The Plaintiffs-Appellants (hereinafter "Plaintiffs") hereby submit that the United States District Court for the Eastern District of North Carolina had proper original jurisdiction pursuant to 28 U.S.C.A § 1332 in that the amount in controversy exceeds the sum of $75,000 and is between citizens of different States.  28 U.S.C.A. § 1332.

Plaintiffs also submit that the Notice of Appeal was timely filed within 30 days after Order was entered by the Honorable James C. Dever, III, Chief United States District Judge pursuant to Rule 4 of the Federal Rules of Appellate Procedure.  J.A., 46.

**STATEMENT OF THE ISSUES**

I.  Whether collateral estoppel bars Plaintiffs/Appellants' claims against the Defendants/Appellees?

**STATEMENT OF THE CASE**

The basis of this lawsuit concerns a dispute regarding an Ocean Isle Beach property that was purchased by the Plaintiffs after hiring the Defendants-Appellees, Sarah Harris and Cooke

Realty, Inc. (hereinafter "Cooke Realty"), to act as their real estate broker in the transaction. J.A., 6. Plaintiffs have alleged fraud and misrepresentation, breach of fiduciary duty and agency agreement, unfair and deceptive trade practices, and punitive damages against all Defendants (with the exception of the punitive damages claim which was only made against Sarah Harris), due to Plaintiffs discovery that the Defendants withheld material information related to the property which would have substantially impacted Plaintiffs decision to purchase the property. J.A., 5-14.

This lawsuit was originally filed in the District Court on or about 3 November 2014. J.A., 5-14. On or about 15 October 2012, prior to this lawsuit being filed, Plaintiffs filed a separate lawsuit in Union County Superior Court of North Carolina against the sellers of the property, David Kesiah and Louis Kesiah (hereinafter "the Kesiahs"), and against Sarah Harris and Cooke Realty. J.A., 26. On or about 22 April 2013, the Honorable W. David Lee heard *only* the motion for summary judgment on behalf of the Kesiahs. J.A., 28. Judge Lee granted summary judgment as to the Kesiahs only on or about 26 April 2013. J.A., 28. The Plaintiffs later voluntarily dismissed Sarah Harris and Cooke Realty in order to appeal the summary judgment decision by Judge Lee. J.A., 29.

On or about 15 July 2014, the North Carolina Court of Appeals affirmed the decision of the Union County Superior Court in granting summary judgment as to the Kesiahs only. J.A., 25-43. As noted in the Order, the conclusion and holding reached by the North Carolina Court of Appeals only pertained to the Kesiah Defendants, and the Court did not hear any facts as alleged against Sarah Harris or Cooke Realty because they were not a party to that appeal. J.A., 25-43.

On or about 2 December 2014, after the present lawsuit was filed, the Defendants filed a motion to dismiss Plaintiffs' claims. J.A., 22-24. On or about 8 May 2015, the Honorable James C. Dever, III entered an Order granting the Defendants' motion to dismiss on the grounds of collateral estoppel. J.A., 44.

The Plaintiffs are appealing the final decision of the District Court granting the Defendants' motion to dismiss. J.A., 46.

### Statement of the Facts

Plaintiffs purchased the Ocean Isle property (hereinafter "the property"), which is the subject of this dispute, for approximately $349,000, and soon after purchasing, discovered significant wood rot beneath the exterior wall cladding, among other issues, which required in excess of $75,000 in repairs. J.A., 6-8.

As contained in Plaintiffs' complaint, and echoed in this brief, the entire basis of Plaintiffs' claims against these Defendants specifically arises from an incident involving Sarah Harris, who was at all times acting as a real estate agent for the Plaintiffs and as a member/agent of Cooke Realty, Inc. J.A., 6-13, and J.A. 15.    Prior to Plaintiffs closing on the property, Harris was on the property with a contractor, Darryl Moffett, who was hired by the Plaintiffs to perform minor touch up work on the home.  J.A., 6.  When Moffett pressed his hand on the exterior wall of the home in front of Harris, a piece of wall cladding fell off the wall revealing rotted oriented strand board sheathing ("OSB").  J.A., 6.  Sarah Harris attempted to attach the shingle back to the house, but it would not fit. J.A., 7 and J.A., 15.    Harris then told Moffett that she believed "it was already listed on the inspection report." J.A., 15.  Sarah Harris knew, or reasonably should have known, that the inspection report did not identify this defect, as the wall cladding did not fall off until after Moffett pressed his hand on it.   J.A., 7.   Sarah Harris never disclosed this incident to the Plaintiffs nor did she disclose her knowledge of the material defect she witnessed on the property prior to closing.  J.A., 9.  Said acts by Sarah Harris all occurred while she was in a fiduciary capacity to the Plaintiffs as the Plaintiffs real estate agent.  J.A., 6-13.   If the Plaintiffs

had known about this incident prior to closing, they would not have purchased the home. J.A., 7.

In sum, the Defendants alleged in their motion to dismiss that collateral estoppel bars all of Plaintiffs claims against the Defendants as a result of the decision and Order entered by the North Carolina Court of Appeals on the *Folmar v. Kesiah* matter. J.A., 22-23.

As discussed in further detail below, the Plaintiffs contend that vendors of the property in question and a real estate broker *hired by the Plaintiffs* do not share similar legal duties to the Plaintiffs, and the facts as alleged against these Defendants were substantially different from those alleged against the vendors of the property, the Kesiahs. J.A., 6-13. Further, the North Carolina Court of Appeals decision and opinion pertains only to issues between Plaintiffs and the Kesiah Defendants. J.A., 25-43. The present Defendants-Appellees, Sarah Harris and Cooke Realty, were not a party to the state appeal, and no claims against Sarah Harris and/or Cooke Realty were ever litigated. J.A., 28-29.

### SUMMARY OF ARGUMENTS

Plaintiffs contend that collateral estoppel does not apply to this lawsuit, and that the District Court's granting of the Defendants' motion to dismiss was in error and improper. Plaintiffs' heavily rely on *Williams v. Peabody*, 217 N.C. App.

1, 6, 719 S.E.2d 88, 93 (2011), in arguing that, "for purposes of collateral estoppel, 'the prior judgment serves as a bar only as to issues actually litigated and determined in the original action.'"

Put simply, the factual issues and allegations complained of by the Plaintiffs against Defendants, Sarah Harris and Cooke Realty, are entirely different than those complained of in the prior lawsuit against the Kesiahs. J.A., 5-14. The Defendants' fiduciary role as the Plaintiffs real estate agent has never been litigated, the determination of whether the Defendants had a legal duty to disclose all material facts discovered *after* the inspection of the property was never litigated, the alleged deception of Sarah Harris days before closing was never litigated, the agency agreement between the Defendants and Plaintiffs was never litigated, among other issues. J.A., 5-21.

### ARGUMENT WITH STANDARD OF REVIEW

### Discussion of the Issues

I. **Whether collateral estoppel bars Plaintiffs/Appellants' claims against the Defendants/Appellees?**

    A.   <u>MOTION TO DISMISS STANDARD</u>

In the present lawsuit the District Court granted Defendants 12(b)(6) motion to dismiss on the grounds of collateral estoppel. J.A., 44.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the Defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). "[W]hen ruling on a Defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007).

B.  <u>COLLATERAL ESTOPPEL</u>

First, as stated above, it should immediately be noted that if all of Plaintiffs' allegations in the Complaint are treated as true, and the Court examines the entire holding from the North Carolina Court of Appeals, collateral estoppel cannot apply as these are different Defendants, different factual allegations, and different claims for relief. *Williams v. Peabody*, 217 N.C. App. 1, 6, 719 S.E.2d 88, 93 (2011); *See*, J.A. 5-14 and J.A., 25-43. In *Williams*, the Court held:

> A very close examination of matters actually litigated must be made in order to determine if the underlying issues are in fact identical[;] [i]f they are not identical, then the doctrine of collateral estoppel does not apply.

*Id.*

The opinion by the North Carolina Court of Appeals, by which the Defendants and the District Court heavily rely upon, was rendered only as between Plaintiffs and the Kesiahs (hereinafter "the Kesiah case"). J.A., 22-23 and J.A., 44. Since the named Defendants in the present lawsuit were not a party to that proceeding, and the claims against the present Defendants are substantially different than those againt the Kesiahs, any claim for collateral estoppel fails. *Williams v. Peabody*, 217 N.C. App. 1, 6, 719 S.E.2d 88, 93 (2011).

Furthermore, as discussed below, the duties of the parties are not identical because the Defendants were real estate agents hired by the Plaintiffs, as opposed to the sellers of the property, the Kesiahs. J.A., 6-14.

The arguments before the North Carolina Court of Appeals centered on the inspection report obtained by the Plaintiffs prior to closing, and whether the Plaintiffs could rely on material misrepresentations of the sellers if the Plaintiffs had already conducted an inspection that allegedly notified the Plaintiffs of some defects. J.A., 32-41.

Simply, Plaintiffs are not making the same allegations here, and the inspection report is irrelevant to Plaintiffs' case in chief against these named Defendants because the Plaintiffs are alleging misrepresentations taken by the Defendants which occurred after the inspection report was obtained, and which involved new defects previously undiscovered. J.A., 6-13, and J.A., 15.

C.    DUTIES OF REAL ESTATE AGENTS

The Court in *Spence v. Spaulding & Perkins* identified the legal standard of real estate agents in North Carolina, in holding:

> [A broker's] duty includes a legal ... responsibility to secure for the principal the best bargain in terms that his skill, judgment and diligence can obtain. A broker has a duty not to conceal from his principals any material information and to make full, open disclosure of all such information.

*Spence v. Spaulding & Perkins*, *Ltd.*, 82 N.C. App. 665, 667, 347 S.E.2d 864, 865-66 (1986) (citation omitted); *see also John v. Robbins*, 764 F. Supp. at 389 (M.D.N.C. 1991).

Plaintiffs' case against these Defendants centers on material information learned by the Defendants – *after Plaintiffs' inspection but prior to closing* – that the Defendants failed to disclose. J.A., 6-13. If the Defendants had disclosed the material information, Plaintiffs would not have purchased the home. J.A., 7.

There are several critical distinctions between this case and the Kesiah Case (aside from different defendants and different claims) due to the fact that these Defendants suppressed the material information of a large rotten shingle falling off the home, which was witnessed by Sarah Harris after Plaintiffs conducted their inspection. J.A., 6-7, and J.A., 15. Defendants had an affirmative fiduciary duty to disclose to Plaintiffs all material issues or defects with the property. J.A., 10-12; see *John v. Robbins*, 764 F. Supp. 379 (M.D.N.C. 1991).

D.    *JOHN V. ROBBINS* ANALYSIS

The most notable example of a broker's duty versus a seller's duty is best identified in *John v. Robbins*:

> A broker has a fiduciary duty 'to disclose to the transferor all material facts.' *John v. Robbins*, 764 F. Supp. 379 (M.D.N.C. 1991), *Link v. Link*, 278 N.C. 181, 192, 179 S.E.2d 697, 704 (1971). Defendants *may not evade their duty* to communicate directly to their principals simply by demonstrating the material information was otherwise available to the Johns [Plaintiffs].

*Id*. (Emphasis added). These few sentences in John exemplify why collateral estoppel cannot apply to this case. The duties of a real estate agent are not the same as those of a seller, and the real estate agent has an affirmative duty to communicate directly with its principals regardless of the other material information available. *Id*.

10

The anticipated crux of the Defendants' response to this brief is that even if Harris and Cooke Realty had a duty to communicate the material defect with the Plaintiffs, Plaintiffs could not have relied on any material misrepresentation due to the inspection report obtained by the Plaintiffs prior to closing. However, that argument fails for two reasons, (a) the inspection report did not disclose what was uncovered by the Defendants, and even if it did, which is expressly denied, (b) *John v. Robbins* holds the Defendants still may not "evade their duty."[1] *Id.*

<div align="center">*John v. Robbins* Facts</div>

Due to *John v. Robbins* having parallel facts to this case, below is a detailed summary of the Court's analysis. *John v. Robbins*, 764 F. Supp. 379 (M.D.N.C. 1991).

In *John*, the Plaintiffs were Tommy John and his wife Sally. Tommy John was a renowned major league baseball player who was looking to purchase a home of at least 5,000 square feet to accommodate his four children. *John v. Robbins*, 764 F. Supp. 379 (M.D.N.C. 1991). John hired Morris, a real estate agent with Merrill Lynch to find him a property. At the same time, the Cox family was selling their home and Merrill Lynch was the

---

[1] As alleged in Plaintiffs complaint, the Defendants witnessed the material defect physically falling off the house days before closing, and *after* the inspection report was submitted. J.A., 6-7, and J.A., 15.

selling agent for said property. *Id*. In fact, unbeknownst to the Plaintiffs, Morris was acting as the sellers' (Coxes) agent and the agent for the Johns. Later, John expressed serious interest in the Cox home. *Id*. In order to accurately list the Cox home, Merrill Lynch and Morris visited the home to obtain information, including square footage. *Id*. This information was necessary to determine the appropriate list price. *Id*.

Mistakenly, Morris and Merrill Lynch relied on their own interpretation of the architectural plans for the Cox home, and gave the Johns a listing that illustrated 4,847 square feet, instead of the actual square footage of 4,212. *Id*. The Plaintiffs agreed to purchase the home for $520,000, believing that the home was 4,847 square feet. *Id*. In order to get financing, the lender for Plaintiffs required an appraisal. *Id*. The lender's appraiser measured the home and came up with 4,212 square feet. *Id*. This difference in square footage prevented the lender from financing the home because the fair market value of the home did not equal the purchase price of $520,000. *Id*. This information was relayed to Morris and Merrill Lynch. *Id*. Morris and Merrill Lynch failed to disclose to Plaintiffs why the lender's appraised number was so low. *Id*. Instead, Morris and Merrill Lynch informed Plaintiffs that their own appraisal revealed a value of $520,000. *Id*. The Plaintiffs proceeded with the sale based on said information. *Id*. It was not until

years later that the Plaintiffs discovered the material information withheld by the Defendants. When they discovered it, they alleged fraud, negligent misrepresentation, breach of fiduciary duty, and unfair and deceptive trade practices as to the Coxes (sellers) and Morris and Merrill Lynch (collectively). *Id.* The Middle District granted summary judgment in favor of the Coxes and denied summary judgment as to all claims against the real estate agent Defendants. (Fact summary from *John v. Robbins*, 764 F. Supp. 379-384 (M.D.N.C. 1991)). In the present action, as in *John*, the sellers (the Kesiahs) were granted summary judgment. J.A., 28.

<p style="text-align:center;">*John v. Robbins* Holding</p>

In the interests of brevity, Plaintiffs will only discuss the decisions as pertained to the real estate agent Defendants. In *John*, Defendants first claimed that the Plaintiffs could not maintain a fraud action because the Defendants alleged Plaintiffs could not show that "they reasonably relied upon Defendants' false representations of the square footage. . ." *Id*. at 385. The theory was that since the Plaintiffs toured the home and inspected the home, the square footage measurements were easily attainable for the Plaintiffs. *Id*. The Court rejected this theory, quoting *Marshall v. Keaveny*, 38 N.C. App. at 649, 248 S.E.2d at 754:

<p style="text-align:center;">13</p>

The point at which reliance ceases to be reasonable and becomes such negligence . . . that it will . . . bar recovery is difficult to determine and, in close cases, should be resolved in favor of the party alleging reasonable reliance upon fraudulent misrepresentations.

*Id*.

The Court held that the facts surrounding the difficulty in measuring the home coupled with the statements from the real estate agent (the Defendants), presented questions of fact as to Plaintiffs' duties and ability to rely on representations. *Id*.

Similarly, in the case at bar, the facts surrounding the incident with Sarah Harris present many questions of fact as to whether the Plaintiffs can rely on the Defendants' failure to disclose material information learned by the Defendants after the inspection but prior to closing. J.A., 6-13. Plaintiffs contend that the one fact of Harris witnessing a piece of wall cladding coming off a house, after the inspection report was produced, precludes any dispositive motions because the Defendants failed to disclose an unknown material defect. J.A., 6-13, and J.A., 15. Furthermore, hidden defects are certainly harder to ascertain than determining the open and obvious square footage of a home, making this case even more in favor of the Plaintiffs.

In denying the Defendants' motion for summary judgment on the breach of fiduciary duty claim, the *John* court went through

a thorough explanation of the fiduciary duties of real estate agents to their principals. *Id*. at 388-390. Much of the language used by the court is contained in the preceding and subsequent paragraphs of this memorandum and need not to be re-addressed. In the end, the *John* court held that the breach of fiduciary duty claim survived, as well as the claim for unfair and deceptive trade practice due to the square footage of the home being a material fact that was concealed from the Plaintiffs. *Id*. at 392. The court held:

> Plaintiffs' allegation that the Merrill Lynch Defendants failed to disclose the square footage of the home states a claim for unfair and deceptive trade practices sufficient to withstand Defendants' motion for summary judgment.
>
> *Id*.

Plaintiffs' issues in this action are identical to that of the *John* case in regards to the fact that in both cases, the Defendants failed to disclose a material fact, and the Plaintiffs relied on Defendants' fiduciary duty to affirmatively inform them of all material facts that would affect the real estate transaction. J.A., 6-13. Ultimately, Defendants' failure to disclose proximately caused damage to the Plaintiffs. J.A., 6-13.

E.   DIFFERENCES BETWEEN KESIAH CASE AND PRESENT LAWSUIT

It is undisputed that the Kesiahs did not owe a fiduciary duty to the Plaintiffs beyond the contract documents. It is

undisputed that the Kesiahs were not acting as agents of the Plaintiffs at any time in this real estate transaction. It is undisputed that the North Carolina Court of Appeals did not rule on any breach of fiduciary duty claims against the Kesiahs (because no claims for breach of fiduciary duty were made in the previous lawsuit). J.A., 25-43. It is undisputed that there was no agency agreement between the Kesiahs and the Plaintiffs. Likewise, the fraud and misrepresentation claims against the Kesiahs were substantially different than those made against the present Defendants. J.A., 8-10, J.A., 15-16, J.A., 32-41.

F.    FRAUD AND MISREPRESENTATION CLAIM

The context of the fraud and misrepresentation analysis examined by the North Carolina Court of Appeals focused on the buyers' duties of due diligence, and the sellers' obligations and duties to the buyer. The Court specifically addressed the residential disclosure statement signed by the Kesiahs, and how, in order to show a prima facie case of fraud against the sellers, the buyers (Plaintiffs) must show reasonable reliance to the sellers' residential disclosure statements.[2]  J.A., 32-41.

---

[2] This Court should take note that the Residential Disclosure Statement was the document that the North Carolina Court of Appeals stated the Plaintiffs could not reasonably rely upon due to their later inspection of the premises. J.A., 33-34. In the present action, the inspection had already been performed, and Harris discovered a new, hidden defect after the inspection, which was not disclosed. J.A., 6-13.

In this case, the analysis of fraud and misrepresentation has to do with whether the Defendants, who were hired by Plaintiffs, committed fraud and materially misrepresented information to the Plaintiffs when the Defendants witnessed a large piece of wall cladding fall directly off the home, exposing rotten wood, and failed to inform the Plaintiffs of the defect in order to finalize the sale of the property. J.A., 6-13, and J.A., 15. This information was concealed even though the Defendants knew the material defect was not listed on the inspection report (because it had just occurred). J.A., 8-10, and J.A., 15.

> In sum, under *Brown*, a real estate broker has a duty to make full and truthful disclosure of all known or discoverable facts likely to affect the client. And, the client may rely upon the broker to comply with this duty and forego his or her own investigation. *Brown v. Roth*, 133 N.C. App. 52, 54-55, 514 S.E.2d 294, 296 (1999). *See also Spence v. Spaulding & Perkins, Ltd.*, 82 N.C. App. at 667, 347 S.E.2d at 865-66 ("A broker has the duty not to conceal from his principals any material information and to make full, open disclosure of all such information."). *Sutton v. Driver*, 211 N.C. App. 92, 100, 712 S.E.2d 318, 323 (2011).

The Plaintiffs relied on the Defendants to provide them with all material information related to the property, and the new discovery of wall cladding falling off the home would have substantially impacted Plaintiffs decision to purchase the home. J.A., 7.

Based on the many dissimilarities between the Kesiah case and the present action, and based on *Williams v. Peabody* and *John v. Robbins*, among other relevant precedent named above, Plaintiffs contend that the District Court erred in dismissing Plaintiffs' lawsuit on the theory of collateral estoppel.

<p style="text-align:center"><strong>CONCLUSION</strong></p>

For the reasons stated above, the Plaintiffs respectfully request that this Court reverse the Order of the District Court, which granted Defendants' motion to dismiss on the grounds of collateral estoppel."

<div style="margin-left:40%">

/s/ F. William DeVore, IV
F. William DeVore, IV
NC Bar #39633
DeVore, Acton and Stafford, P.A.
438 Queens Road
Charlotte, North Carolina 28207
wdevore@devact.com

</div>

**CERTIFICATE OF COMPLIANCE**

1.   This brief complies with the type-volume limitation of Fed.
     R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

     [       ] this brief contains [*state the number of*] words,
     excluding the parts of the brief exempted by Fed. R. App.
     P. 32(a)(7)(B)(iii), *or*

     [   X   ] this brief uses a monospaced typeface and contains
     [*446*] lines of text, excluding the parts of the brief
     exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed.
     R. App. P. 32(a)(5) and the type style requirements of Fed.
     R. App. P. 32(a)(6) because:

     [       ] this brief has been prepared in a proportionally
     spaced typeface using [*state name and version of word
     processing program*] in [*state size and name of font*]; or

     [   X   ] this brief has been prepared in a monospaced
     typeface using [*Microsoft Word 2007*] with [*10 inch per
     character Courier New Font*].


Dated: July 13, 2015                /s/ F. William DeVore, IV
                                    *Counsel for Appellant*

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 13th day of July, 2015, I caused this Brief of Appellants and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Clay A. Collier
> CROSSLEY, MCINTOSH, COLLIER,
>   HANLEY & EDES
> 5002 Randall Parkway
> Wilmington, North Carolina  28403
> (910) 762-9711

> *Counsel for Appellees*

I further certify that on this 13th day of July, 2015, I caused the required copies of the Brief of Appellants and Joint Appendix to be hand filed with the Clerk of the Court.

<div align="right">

/s/ F. William DeVore, IV
*Counsel for Appellant*

</div>